IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CHAUNCEY DENTMOND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 22-cv-02401-tmp |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

On June 22, 2022, Chauncey Dentmond filed a Complaint seeking judicial review of a social security decision. (ECF No. 1.) Dentmond seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income. For the following reasons, the decision of the Commissioner is AFFIRMED.

**I. BACKGROUND**

**A. Procedural History**

On September 28, 2017, Dentmond filed an application for child's insurance benefits based on disability and an application for supplemental security income. (R. at 125.) These claims were denied on February 22, 2018, and again upon reconsideration on May 24, 2018. (Id.) The matter was remanded, and a hearing was held on

March 12, 2021. (Id. at 14.) The Appeals Council directed the ALJ to do the following:

- Adjudicate the claim as of the original alleged onset date of disability. If the claimant amends the alleged onset date of disability, the Administrative Law Judge will confirm that the claimant understands the effects and consents to amending the onset date of disability.

- Further evaluate the claimant's symptoms in accordance with 20 CFR and 416.929 and Social Security Ruling 16-3p.

- In accordance with Social Security Acquiescence Rulings 98-3(6) (Dennard v. Secretary of Health and Human Services) and 98-4(6) (Drummond v. Commissioner of Social Security), the Administrative Law Judge will discuss the prior decision and include decisional language explaining which findings from the prior decisions remain binding and which do not. If the Administrative Law Judge finds that new and material evidence warrants not adopting the prior Administrative Law Judge's residual functional capacity finding, the hearing decision must identify the new evidence and state why the evidence is material.

- If warranted by the expanded record obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-14 and 85-15). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

- If the claimant is found disabled, conduct further proceedings to determine if the claimant failed without good reason to follow prescribed treatment in accordance with 20 CFR 404.1530 and 416.930 and Social Security Ruling 18-3p. In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

(Id. at 14-15.)

By letter dated March 11, 2021, Dentmond's representative withdrew the hearing request on the Title II child's insurance benefits claim and sought to amend the alleged onset date of disability to September 28, 2017, which was the application date. (Id. at 15.) In support of the withdrawal and amendment, Dentmond's representative stated that he and his mother were fully advised and understood the effects of the withdrawal. In response to the Appeals Council's concerns regarding the withdrawal, the ALJ questioned Dentmond and his mother during the hearing to confirm that they understood the effects of the withdrawal. (Id.) The ALJ determined that Dentmond was advised of and understood the effects of the withdrawal request and granted the request to amend the alleged onset date of disability to September 28, 2017. (Id.) Accordingly, the ALJ dismissed Dentmond's application for Title II benefits. (Id.)

The ALJ then considered Dentmond's application for benefits under Title XVI. (Id.) Dentmond previously filed an application for Title XVI benefits on March 26, 2007, with a decision issuing

on October 12, 2009. (Id.) The ALJ considered the Sixth Circuit's standards for applying *res judicata* to social security cases as well as Acquiescence Rulings ("AR") 98-3(6) and 984(6). (Id.) Pursuant to these rulings, the ALJ reviewing a subsequent claim must adopt a prior finding of a claimant's residual functional capacity ("RFC") or other required finding "unless there is new and material evidence relating to that finding, or there has been a change in the law, regulations, or rulings affecting the finding or method for arriving at the finding." (Id.) The ALJ determined that new and material evidence existed relating to Dentmond's severe impairments, his RFC, and the type of jobs that he could perform. (Id. at 16.) Additionally, the ALJ declined to adopt the prior finding that Dentmond did not have an impairment or condition that met or medically equaled one of the listed impairments because the medical listings changed since the date of the last decision. (Id.) However, the ALJ adopted the findings regarding Dentmond's date of birth, education level, transferability of skills, and past relevant work. (Id.)

**B.   The ALJ's Decision and the Five-Step Analysis**

The ALJ used the five-step analysis to conclude that Dentmond was not disabled. (Id. at 24.) That five-step sequential analysis is as follows:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

- 4 -

    2. An individual who does not have a severe impairment will not be found to be disabled.

    3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

    4. An individual who can perform work that he has done in the past will not be found to be disabled.

    5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

<u>Petty v. Comm'r of Soc. Sec.</u>, No. 1:14-cv-01066-STA-dkv, 2017 WL 396791, at *2 (W.D. Tenn. Jan. 30, 2017) (citing <u>Willbanks v. Sec'y of Health & Human Servs.</u>, 847 F.2d 301 (6th Cir. 1988)).

At the first step, the ALJ determined that Dentmond had not engaged in substantial gainful activity since September 28, 2017. (R. at 18.) At the second step, the ALJ determined that Dentmond had schizophrenia, which is a severe impairment that significantly limited Dentmond's ability to perform basic work activities. (<u>Id.</u>) At the third step, the ALJ determined that Dentmond did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (<u>Id.</u>) Accordingly, the ALJ assessed Dentmond's RFC based on all the relevant medical and other evidence in the case record. 20 C.F.R. § 404.1520(e).

The ALJ determined that he had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [Dentmond] can remember, understand and perform simple routine tasks, that involve working with things, rather than people, with normal breaks; can maintain occasional interaction with supervisors and coworkers, limited to only that necessary to accomplish task; tasks should require no more than superficial or incidental interaction with public; and can adapt to infrequent and gradually introduced changes.

(R. at 19.) The ALJ considered all the symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR § 416.929 and SSR 16-3p. (Id.) The ALJ also reviewed the medical opinion(s) and prior administrative medical finding(s)in accordance with the requirements of 20 CFR § 416.920c. (Id.) In considering Dentmond's symptoms, the ALJ followed a two-step process: (1) whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Dentmond's pain or symptoms; and (2) the extent to which the intensity, persistence, and limiting effects of the system limited Dentmond's work-related activities. (Id.) For the second part, whenever statements about the intensity, persistence, or functionally limiting effects of the pain or symptoms are not substantiated by objective medical evidence, the ALJ must consider other evidence in the record to determine if the

symptoms limited Dentmond's ability to do work-related activities. (Id.)

The ALJ found that Dentmond's medically determinable impairments could reasonably be expected to cause the alleged systems. (Id.) However, the ALJ found that Dentmond's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical evidence and other evidence in the records. (Id. at 20.) Dentmond alleged that his disability was due to bipolar disorder and schizophrenia. (Id.) However, the ALJ found that the evidence supported only a severe impairment of schizophrenia. (Id.) Additionally, the ALJ determined that Dentmond's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with his treatment record. (Id.) The medical evidence in the record included documentation of a three-day hospitalization at Lakeside in 2008. (Id.) The discharge notes included a history of psychosis, secondary to noncompliance with medication. (Id.) The record indicated that Dentmond's symptoms stabilized with medication, and he was alert and oriented at the time of discharge. (Id.) The ALJ noted that the mental health treatment records generally showed mild to moderate symptoms, with frequent mental status examination findings within normal limits, despite Dentmond's alleged multiple symptoms asserted at the hearing. (Id.)

The ALJ reviewed Dentmond's history of treatment with HealthQuest. (Id.) On September 26, 2017, Dentmond reported that his symptoms flare up just prior to his next scheduled shot, which occur every three months, and that he continued to hear voices. (Id.) He also reported an incident where he cursed at unseen persons. (Id.) Although the mental status exam was within normal limits, the treatment notes state that he will always have debilitating psychosis, even at baseline. (Id.) On the other hand, the ALJ considered the treatment records from November 2017, which noted that Dentmond reported feeling fine, that his symptoms were controlled, and that he only experienced intermittent hallucinations that did not impair his functioning. (Id.) The record further indicated that he had no physical complaints and that his mental status examination was within normal limits. (Id.) The ALJ determined that the reported symptoms from September 26, 2017, were inconsistent with the documented observations and the treatment notes as a whole, finding that the treatment notes generally reflect that Dentmond's symptoms were controlled with adherence to prescribed medical treatment. (Id.)

The ALJ then considered Dentmond's visits with Dr. Akinwumiju. In February 2018, Dr. Akinwumiju assessed Dentmond as having attitude behavior, motor active, thought process content, perception, memory, concentration, and persistence all within normal limits. (Id.) Dr. Akinwumiju also assessed Dentmond as

having an appropriate affect, normal speech, good judgment, and orientation, noting that the only apparent abnormality was concrete thinking. (Id.) Dentmond also reported that he had been carjacked in December 2017. (Id. at 21.) The history section simply stated that he reported the carjacking. (Id.) Under the heading of therapy/intervention, the treatment records noted psychological therapy, a cognitive behavioral therapy, and brief solution focused therapy. (Id.) Dr. Akinwumiju expressed no specific concern over Dentmond's apparent driving or being out in public, and the therapy/intervention was unchanged from prior visits. (Id.)

In October 2019, Dr. Akinwumiju assessed Dentmond as having attitude behavior, motor active, thought process content, perception, memory, concentration, and persistence all within normal limits. (Id. at 20.) He also had good judgment/insight and a euthymic mood. (Id.) Dr. Akinwumiju observed that Dentmond had a blunted affect and impaired abstract reasoning but described his symptoms as stable and improved. (Id.) In December 2019, Dentmond reported no hallucinations since the prior visit. (Id.)

In March 2020, Dentmond reported no hallucinations. (Id.) Notably, Dr. Akinwumiju changed Dentmond's return visit from from twelve weeks to sixteen weeks. (Id. at 21.) The ALJ reasoned that this elongation of time between visits did not support disabling limitations. (Id.) In October 2020, Dentmond reported that his

symptoms were controlled on his current medication. (Id.) His assessment was generally within normal limits except for affect and abstract thinking. (Id.) Dr. Akinwumiju reduced the return visit from sixteen weeks to twelve weeks, but reduced Dentmond's prescription for Haldol with a notation to monitor. (Id.)

The ALJ determined that Dentmond's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical record and his demonstrated abilities. (Id.) The State examiners observed the substantial degree of independent activity by Dentmond during the day, noting that he socialized with friends, shopped unaccompanied, and drove. (Id.) The function report completed by Dentmond's mother stated that he drove a car, went to the store unaccompanied, and could spend days by himself. (Id.)

The ALJ determined that, while longitudinal evidence established a severe mental impairment that impacted Dentmond's ability to meet mental demands of work, the record as a whole did not establish disability. (Id.) The ALJ explained that the treating source notes, which routinely documented examinations generally within normal reference, the lack of reference to observations of delusional symptoms, and no worsening symptoms with adherence to prescribed medical treatment weighed against a finding of disability. (Id.)

The ALJ found the March 2018 opinion by Dr. Akinwumiju to have minimal persuasive value. (Id. at 22.) In that opinion, he stated that Dentmond had extreme limitations in the area of activities of daily living, maintaining social function, and in maintaining concentration, persistence, and pace with four or more episodes of decompensation in a twelve-month period. (Id.) However, the ALJ found that this statement was inconsistent with Dr. Akinwumiju's assessments in the treatment records finding Dentmond within normal limits. (Id.) Specifically, at the visit prior this statement from Dr. Akinwumiju, he documented that Dentmond's only apparent abnormality was in concrete thinking, and the frequency of treatment was not consistent with the degree of limitations expressed in his opinion. (Id.)

Similarly, the ALJ found that Dr. Akinwumiju's written opinion in March 2021 was not persuasive. (Id.) In that opinion, he stated that Dentmond had no useful ability to function, including the ability to understand, remember, and carry out very short and simple instructions. (Id.) However, the ALJ found that this statement was inconsistent with Dr. Akinwumiju's assessments in the treatment records finding Dentmond within normal limits. (Id.) The ALJ reasoned that the findings in July 2020 were generally within normal limits except for a blunted affect and an impairment of abstract thinking. (Id.) Further, the ALJ noted that the medical records showed that Dentmond's symptoms were

- 11 -

controlled on his medication and that the assessments were within normal limits for over a year. (Id.) Finally, the ALJ stated that Dr. Akinwumiju did not express any concern over Dentmond's ability driving by himself, and the ALJ found that this lack of concern contradicts Dr. Akinwumiju's written opinion expressing concern over Dentmond's ability to follow simple instructions and take appropriate precautions for hazards. (Id.)

The ALJ also determined that the determinations by the State agency regarding insufficient evidence as being of minimal persuasive value. (Id.) The ALJ explained that the evidence was sufficient to establish a severe impairment but insufficient to support a finding of disability. (Id.) The ALJ highlighted the State examiners' notes indicating that Dentmond had a substantial degree of independent activity, socialized with friends, shopped unaccompanied, and drove. (Id.) Finally, the ALJ considered Dentmond's mother's testimony and found that her testimony was not supported by the treatment records or his daily activities. (Id.)

At the fourth step, the ALJ determined that Dentmond had no past relevant work. (Id.) Finally, at the fifth step, the ALJ determined that, considering Dentmond's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. (Id. at 23.) The ALJ considered the testimony of a vocational expert who testified that, given all the non-exertional limitations in the

record, Dentmond could perform the requirements of jobs such as packager, warehouse worker, and laundry laborer. (Id.)

On appeal, Dentmond asks the undersigned to revise to ALJ's decision as not supported by substantial evidence. (ECF No. 8, at PageID 659.) Specifically, Dentmond argues that the ALJ did not offer an adequate justification for finding the opinions of Dr. Akinwumiju to be unpersuasive. (Id.)

## II. CONCLUSIONS OF LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

B.  **Substantial Evidence Supported the ALJ's Assessment of Dr. Akinwumiju's Medical Opinions**

Dentmond argues that the ALJ did not provide a sufficient justification for finding Dr. Akinwumiju's opinions to be unpersuasive. (ECF No. 8, at PageID 667.) For the reasons contained herein, substantial evidence supported the ALJ's determination.

Because Dentmond filed this claim on September 28, 2017, the rules in 20 C.F.R. § 416.920c apply in determining whether the ALJ properly considered Dr. Akinwumiju's opinion. See 20 C.F.R. § 416.920c ("For claims filed . . . on or after March 27, 2017, the rules in this section apply."). Under the current regulations, "an ALJ is prohibited from 'defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources.'" Roberts v. Comm'r of Soc. Sec. Admin., No. 3:22-cv-229, 2023 WL 5615359, at *5 (E.D. Tenn. Aug. 11, 2023) (quoting 20 C.F.R. § 404.1520c). Instead, the ALJ was required to consider multiple factors, including (1) supportability, (2) consistency, (3) a source's relationship with the claimant, (4) specialization, and (5) other supporting or contradicting factors. Id. "Supportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." Jones. v. Berryhill, 392 F. Supp. 3d

831, 839 (M.D. Tenn. 2019) (quoting Pogany v. Berryhill, No. 4:18-cv-04103-VLD, 2019 WL 2870135, at *27 n.7 (D.S.D. July 3, 2019)).

The ALJ considered the medical record and compared Dr. Akinwumiju's written opinion with his treatment notes and concluded that the written opinions were inconsistent with the entire record and therefore unpersuasive. In Dr. Akinwumiju's March 2018 opinion, he marked that Dentmond had extreme limitations in the area of activities of daily living, maintaining social function, and in maintaining concentration, persistence, and pace with four or more episodes of decompensation in a twelve-month period. (R. at 22; 552.) However, the ALJ found that this statement was inconsistent with Dr. Akinwumiju's assessments in the treatment records finding Dentmond within normal limits. (Id. at 22, 561, 566, 571-72, 583-84, 589-90, 595-96, 601-02, 607-09.)

Similarly, the ALJ found that Dr. Akinwumiju's written opinion in March 2021 was not persuasive. (Id. at 22.) In that opinion, he stated that Dentmond had no useful ability to function, including the ability to understand, remember, and carry out very short and simple instructions. (Id. at 22, 616-17.) However, the ALJ found that this statement was inconsistent with Dr. Akinwumiju's assessments in the treatment records finding Dentmond within normal limits. (Id. at 22.) Dr. Akinwumiju's findings in July 2020 were generally within normal limits except for a blunted affect and an impairment of abstract thinking. (Id. at 22, 601.)

Further, the medical records showed that Dentmond's symptoms were controlled on his medication and that the assessments were within normal limits for over a year. (Id.) Finally, the ALJ noted that Dr. Akinwumiju did not express any concern over Dentmond's ability driving by himself, and the ALJ found that this lack of concern contradicts Dr. Akinwumiju's written opinion expressing concern over Dentmond's ability to follow simple instructions and take appropriate precautions for hazards. (Id.)

Dentmond also contends that the ALJ overlooked his mother's testimony, who claimed that Dentmond minimized his symptoms during his appointments with Dr. Akinwumiju, describing Dentmond as an unreliable informant. (ECF No. 8, at PageID 670.) However, the ALJ considered her testimony, explaining that it was not well supported by the treatment records or Dentmond's daily activities. (R. at 22.) The undersigned finds that the ALJ adhered to the regulations in considering medical opinion evidence, and that the record provided substantial evidence to support the ALJ's decision.

### III.   CONCLUSION

For the reasons above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge


September 12, 2023
Date